IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JUDY WHITTINGTON,<br><br>      **Plaintiff,**<br><br>v.<br><br>NEWMAN REGIONAL HEALTH CENTER,<br>and NEWMAN REGIONAL HEALTH<br>CENTER BOARD OF TRUSTEES, ET AL.<br><br>      **Defendants.** | Case No. 14-CV-4008-DDC-KGG |

## MEMORANDUM AND ORDER

Plaintiff brought this medical negligence action against eight defendants. Plaintiff and two defendants, Newman Regional Health Center and its Board of Trustees, have agreed to settle this lawsuit. In their Joint Motion for Leave to File Under Seal (Doc. 46), the parties indicated they needed the Court to approve their settlement agreement before it could become effective. The Court set the matter for hearing on January 13, 2015. At the hearing, the parties asked the Court: (1) to approve their settlement agreement, pursuant to K.S.A. § 40-3410, and (2) to approve their attorney's fees, pursuant to K.S.A. § 7-121b. After considering the parties' arguments supporting their request, the Court concludes that it is without jurisdiction to approve the parties' settlement agreement and without sufficient evidence to approve their attorney's fees.

### A. K.S.A. § 40-3410 Does Not Govern this Settlement Agreement

At the hearing, the parties argued that K.S.A. § 40-3410 requires the Court to review the settlement agreement to determine whether it is "valid, just and equitable." That statute requires court approval when a settlement imposes liability on Kansas' Health Care Stabilization Fund

1

("the Fund").  "The Fund provides excess medical malpractice coverage to Kansas health care providers who qualify under the Health Care Provider Insurance Availability Act."  *Resolution Oversight Corp. v. Kan. Health Care Stabilization Fund*, 175 P.3d 268, 272 (Kan. Ct. App. 2008).  The Act requires all Kansas health care providers to pay a surcharge to the Fund to qualify for coverage in excess of the policy limits of their usual professional liability insurance.  *Id.*

Normally, "[w]hen a health care provider covered by the Fund is sued for medical malpractice in Kansas, the primary responsibility for defending the health care provider rests with the insurance carrier."  *Id.* (citing K.S.A. §§ 40-3408(a), 40–3410).  But "[i]f the insurance carrier believes that the liability of the health care provider exceeds the applicable policy limits, the carrier may tender the policy limits to the Fund, and the Fund is then responsible for determining whether to mount a defense or settle the malpractice claim."  *Id.*  "If the Fund decides to settle the malpractice claim, the settlement must be approved by the court in which the malpractice action is pending."  *Id.* (citing K.S.A. § 40-3410(a), (c); *Aves By & Through Aves v. Shah*, 906 P.2d 642, 647 (Kan. 1995)).

Here, the parties concede that their settlement agreement does not exceed the limits of defendants' professional liability policy.  Defendants' insurer has not tendered its policy limits to the Fund, and the settlement agreement does not otherwise impose liability on the Fund.  Nevertheless, the parties contend that the statute requires the Court to approve their settlement agreement.  The parties assert that the first sentence of K.S.A. § 40-3410 extends the statute to any medical malpractice settlement involving a health care provider who carries excess medical malpractice coverage through the Fund.

The Court disagrees with the parties' interpretation of the statute. The provision they cite provides that the Court must approve a medical malpractice settlement when, among other circumstances, "the insurer of a health care provider . . . covered by the fund has agreed to settle *its liability* on a claim against its insured. . . and the claimants demand is in an amount in excess of such settlement." K.S.A. § 40-3410 (emphasis added). In plainer English, the statute applies when an insurer settles its own (*i.e.,* the insurer's) liability for a third party's claim against a policyholder, *and* the third party seeks to recover from the policyholder an amount exceeding the applicable malpractice policy limits. *Id.* In addition, the statute provides that the court approval requirement arises "[i]n the event the claimant and the [Fund's] board of governors agree an amount to be paid [from the Fund]." *Id.* Thus, to trigger the statute's court approval provision, a settlement, at a minimum, must involve a decision by the Fund's board of governors to pay money from the Fund itself.

In contrast to the language used by the statute, the parties' interpretation asserts that the statute applies whenever an insurer settles a policyholder's liability for a claim against the policyholder. Plaintiff's interpretation, therefore, is not supported by the ordinary meaning of the words used by the statute. It also conflicts with the interpretation of the statute recognized by Kansas courts. *See e.g.*, *Resolution Oversight*, 175 P.3d at 272 (statute applies when claim exceeds policy limits and insurer settles its liability by tendering policy limits to the Fund); *Hudgens v. CNA/Cont'l Cas. Co.*, 845 P.2d 694, 697 (Kan. 1993) (same); *Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922, 927 (Kan. 1999) (same).

Moreover, the parties' interpretation would require court approval for every medical malpractice settlement because the Kansas Health Care Provider Insurance Act requires all Kansas health care providers to purchase excess coverage from the Fund. K.S.A. § 40-3402(a)

3

(requiring all health care providers to carry malpractice liability insurance), § 40-3402 (imposing a mandatory surcharge on malpractice premiums to pay for excess coverage from the Fund).  If the Kansas legislature had intended to require court approval for all medical malpractice settlements, it is evident that it knew how to impose such a requirement.  *Compare* K.S.A. § 7-121b (requiring Court approval of attorney's fees in any "civil action . . . for damages for personal injuries or death arising out of . . . professional services by any health care provider. . .").  Consequently, the Court concludes that K.S.A. § 40-3410 does not require the Court to approve the parties' settlement agreement because it imposes no liability on the Fund.

The parties next assert that the Court, in an abundance of caution, should nevertheless consider whether the settlement agreement is valid and fair because a court might later determine that K.S.A. § 40-3410 does, in fact, apply.  The Court respectfully disagrees.  In light of its conclusion that the statute does not mandate judicial approval for this settlement agreement, the Court's evaluation of the settlement agreement would amount to no more than an advisory opinion about the enforceability of a contract.  *Hicks v. John F. Murphy Homes, Inc.*, No. 07-CV-121-P-S, 2008 WL 227865, at *1 (D. Me. Jan. 22, 2008) (where no "rule or other authority" permits federal court to review and approve a settlement agreement, defendant's request for judicial approval seeks an impermissible advisory opinion).  While the Court appreciates the parties' desire to protect their settlement agreement, it is without jurisdiction to offer an advisory opinion.  *See Flast v. Cohen*, 392 U.S. 83, 95-97 (1968) (advisory opinions exceed Article III's limitation of federal judicial power to actual cases or controversies).

The Court therefore denies the parties' request for the Court to approve their settlement.  The Court expresses no opinion about whether the settlement is "valid, just, and equitable" because it lacks legal authority to do so.  Plaintiff, as a person who has reached the age of

majority, and defendants are free to execute a lawful contract resolving their dispute without this Court's approval.

## B. The Court Lacks Sufficient Evidence to Approve Attorney's Fees

K.S.A. § 7-121b requires the Court to approve all attorney's fees received by counsel in a medical malpractice case. Unlike K.S.A. § 40-3410, this statute applies to all medical malpractice cases, not just those imposing liability on the Fund. Under the statute, the Court must consider whether the parties' fees are reasonable by examining eight factors:

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation and ability of the attorney or attorneys performing the services.
(8) Whether the fee is fixed or contingent.

K.S.A. §§ 7-121b(a)(1)-(8).

At the hearing, plaintiff's counsel introduced evidence pertinent to some of these factors. Significantly, however, the Court lacks any evidence about the number of hours counsel expended on the case or the reasonable hourly rates for medical malpractice representation in the area. *See Shrout v. Holmes*, No. CIV. A. 00-2069-KHV, 2001 WL 980280, at *2 (D. Kan. Aug. 10, 2001) *on reconsideration in part sub nom. Shrout ex rel. Arnold v. Holmes*, No. 00-2069-KHV, 2001 WL 1526277 (D. Kan. Oct. 18, 2001) (under K.S.A. § 7-121b, "the most useful starting place [to determine reasonable attorney's fees] is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). Absent this crucial evidence, the Court is unable to evaluate the reasonableness of counsel's fees with the rigor

required by K.S.A. § 7-121b.  Accordingly, the Court will defer its ruling on the reasonableness of counsel's fees until they submit additional evidence.

**IT IS THEREFORE ORDERED** that the parties' request for approval of their settlement agreement is denied.  The Court lacks sufficient evidence to approve the parties' attorney's fees under K.S.A. § 7-121b.  The parties are directed to file with the Court all documentation pertinent to the Court's analysis of the factors bearing on the reasonableness of their attorney's fees, as set forth in K.S.A. §§ 7-121b(a)(1)-(8).

**Dated this 15th day of January, 2015, at Topeka, Kansas**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**