# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JUDY WHITTINGTON,

        **Plaintiff,**

v.

NEWMAN REGIONAL HEALTH CENTER,
and NEWMAN REGIONAL HEALTH
CENTER BOARD OF TRUSTEES,

        **Defendants.**

Case No. 14-CV-4008-DDC-KGG

## MEMORANDUM AND ORDER

Plaintiff brought this medical negligence action against eight defendants.  Plaintiff and two defendants, Newman Regional Health Center and its Board of Trustees, have agreed to settle this lawsuit.  In their Joint Motion for Leave to File Under Seal (Doc. 46), the parties indicated they needed the Court to approve their settlement agreement before it could become effective.  The Court set the matter for hearing on January 13, 2015.  At the hearing, the parties asked the Court:  (1) to approve their settlement agreement, under K.S.A. § 40-3410, and (2) to approve their attorney fees, under K.S.A. § 7-121b.  After considering the parties' arguments, the Court issued its Memorandum and Order concluding that it was without jurisdiction to approve the parties' settlement agreement and without sufficient evidence to approve their attorney fees (Doc. 53).  The Court deferred its ruling on the reasonableness of counsel's fees until the parties submitted additional evidence.  Doc. 53 at 6.  Afterwards, defendants' counsel submitted his Affidavit of Fees (Doc. 54) and plaintiff filed a Supplemental Memorandum of Fact and Law in Support of Plaintiff's Motion for Approval of Attorney Fees and Expenses (Doc. 55).  The Court now is prepared to rule on the attorney fees issue.

1

## A.  The Court's Approval of Attorney Fees

In K.S.A. § 7-121b, the Kansas Legislature chose to adopt a rule requiring court approval

of all attorney fees received by counsel in a medical malpractice case.[1]  Under the statute, the

Court must decide whether the parties' fees are reasonable by applying eight statutory factors:

(1) The time and labor required, the novelty and difficulty of the questions
    involved and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular
    employment will preclude other employment by the attorney.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation and ability of the attorney or attorneys performing
    the services.
(8) Whether the fee is fixed or contingent.

K.S.A. § 7-121b(a)(1)-(8).

Under K.S.A. § 7-121b, "the most useful starting place [to determine reasonable attorney

fees] is the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate."  *See Shrout v. Holmes*, No. 00-2069-KHV, 2001 WL 980280, at *2 (D. Kan. Aug.

10, 2001), *on reconsideration in part sub nom. Shrout ex rel. Arnold v. Holmes*, No. 00-2069-

KHV, 2001 WL 1526277 (D. Kan. Oct. 18, 2001).  In this case, defense counsel has provided the

Court with contemporaneous time records, but plaintiff's counsel did not keep contemporaneous

time records because the firm was retained on a contingent fee basis.  The Court will consider the

lodestar analysis here for both parties, but, rather than apply a strict lodestar analysis to

plaintiff's counsel's fees, also discuss the reasonableness of the fees request under each of the

eight factors in K.S.A. § 7-121b.

---

[1] K.S.A. § 7-121b(a) provides that "whenever a civil action is commenced by filing a petition or whenever a pleading states a claim in a district court for damages for personal injuries or death arising out of the rendering of or the failure to render professional services by any health care provider, compensation for reasonable attorney fees to be paid by each litigant in the action shall be approved by the judge after an evidentiary hearing and prior to final disposition of the case by the district court."

### B.  Defendants' Attorney Fees

"The factors listed in K.S.A. § 7-121b are the factors on which the lodestar analysis is based." *Shrout*, 2001 WL 9802080, at *2.  "The first step in calculating the lodestar is to determine the number of hours counsel reasonably expended on the litigation." *Id.* at *3.  A party shall submit contemporaneous time records that show each person for whom fees are sought, their hours worked, and the time spent on each task.  *Univ. of Kan. v. Sinks*, No. 06-2341-JAR, 2009 WL 3191707, at *3 (D. Kan. Sept. 28, 2009).  In determining reasonable hours expended, the court can exclude any hours it finds excessive, redundant, or unnecessary.  *Shrout*, 2001 WL 980280, at *2.  The second step of the analysis is to determine reasonable hourly rates. *Id.* at *4.  The billing rates should be based on "'the norm for comparable private firm lawyers in the area [where] the court sits calculated as of the time the court awards fees.'"  *Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983)).  When determining the reasonable hourly rates, the court compares the rates charged to the rates of lawyers with comparable skill, expertise, and reputation.  *Id.* (first quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); and then quoting *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1204 (10th Cir. 1998)).  "'A district judge may turn to [his or] her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate.'"  *Outdoor Sys., Inc. v. City of Merriam, Kan.*, No. 98-2397-KHV, 2000 WL 575023, at *5 (D. Kan. Feb. 25, 2000) (citing *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994)).

Brian G. Boos, one of the defendants' counsel, submitted his declaration about defense attorney fees (Doc. 54).  Mr. Boos attached to his declaration contemporaneous time records kept by defense counsel (Docs. 54–1, 54–2).  These records detail each person who worked on the case, the tasks they worked on, and the time spent on each task.  *See* Docs. 54–1, 54–2.  Counsel

3

charged hourly rates for this case of $150 for partners, $135 for associates, and $70 for law clerks or paralegals.  Doc. 54 at 1.  At the January 13, 2015 hearing, defense counsel explained that a contract with defendants' insurance company establishes these rates.  Defense counsel submits the contemporaneous time records and billing statements to the insurance company responsible for paying their fees.  Doc. 54 at 1.

Here, defense counsel submitted 206.4 total hours and requested total fees of $27,900.50.  *See id.*; Docs. 54–1, 54–2.  Before the confidential settlement of this case, plaintiff sought $315,495.09 in medical expenses and $500,000 in past and future noneconomic damages.  Doc. 54–3 at 6 (Plaintiff's Fed. R. Civ. P. 26(a)(1) Disclosures).  Plaintiff listed past and future lost wages and future medical expenses as "presently unknown," with total damages not to exceed $1,500,000.  *Id.*  Based on this damage request, defense counsel contends that the number of hours spent and hourly rates charged were fair and reasonable, and thus the Court should approve their attorney fees as reasonable.  *See* Doc. 54 at 2.  The Court agrees.

Upon review of defense counsel's contemporaneous time records and in light of the $1,500,000 potential liability, the Court finds that defense counsel's effort level is certainly not excessive.  The Court thus concludes that the 206.4 hours expended by defense counsel are reasonable.  After considering the skill, expertise, and reputation of counsel and the undersigned's own knowledge about prevailing market rates, the Court also finds that the hourly rates charged were reasonable.  *See Shrout*, 2001 WL 980280, at *5 (finding hourly rates of $165 for lead counsel, $120 for associate, and $60 for paralegal reasonable in 2001 Kansas City medical malpractice case); *cf. Barbosa v. National Beef Packing Co., LLC*, No. 12-2311-KHV, 2015 WL 4920292, at *10 (D. Kan. Aug. 18, 2015) (finding hourly rates of $325 to $425 for experienced attorneys, $180 for attorneys with little to no experience, and $75 for paralegals

reasonable in 2015 Kansas City Fair Labor Standards Act case); *Torkelson v. Jimick Prods., Inc.*, No. 12-1052-EFM, 2012 WL 6623911, at *2 (D. Kan. Dec. 19, 2012) (finding hourly rates of $250 for lead counsel, $175 for co-counsel, and $100 for paralegal reasonable in 2012 Wichita Fair Labor Standards Act case); *Outdoor Sys., Inc.*, 2000 WL 575023, at *5 (finding hourly rates of $155 to $165 for experienced attorneys, $120 for associate, and $70 for law clerks and paralegals reasonable in 2000 Kansas City civil rights case).

Because the lodestar calculation subsumes all eight factors, here, the Court need not discuss the remaining factors individually. *See Shrout*, 2001 WL 980280, at *5 (finding that the other factors listed in K.S.A. § 7-121b are subsumed in the initial lodestar calculation and concluding its reasonable fee analysis). The Court therefore approves defendants' reasonable attorney fees in the amount of $27,900.50.

### C.  Plaintiff's Attorney Fees

The fee arrangement between plaintiff and her counsel provided that counsel would be paid 45 percent of the net settlement award to plaintiff if a lawsuit was filed in the case. This lawsuit was filed and, after some initial settlement negotiations, plaintiff instructed her attorneys to resolve her claims and reach a settlement for personal financial reasons. They did so. Now, plaintiff's counsel ask the Court to approve reasonable attorney fees of $4,355.80 and reasonable litigation expenses of $320.45 as proposed in the confidential settlement agreement.

At the January 13, 2015 settlement hearing, plaintiff's counsel informed the Court that they did not keep contemporaneous time and billing records from which the Court could assess the reasonableness of the proposed fee. During the hearing, plaintiff testified that she felt the settlement was reasonable and asked the Court to approve the attorney fees and expenses. Plaintiff's counsel introduced evidence pertinent to some of the K.S.A. § 7-121b factors. But,

the Court lacked evidence about the number of hours counsel expended on the case or the reasonable hourly rates for medical malpractice representation in the area.  After plaintiff's counsel's additional submissions, the Court now turns to the statutory factors.

      **1.   The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly**

Plaintiff's counsel's failure to keep contemporaneous time records hinders the Court's ability to determine the reasonableness of counsel's level of effort.  *See Shrout*, 2001 WL 9802080, at *3.  The well established legal standard for evaluating reasonable attorney fees involves the use of such records.  *Id.*  And, attorneys who work on a contingent fee basis should keep time records.  *See Bergeson v. Dilworth*, 875 F. Supp. 733, 737 (D. Kan. 1995).  The Court nevertheless finds that some fees are appropriate in this case.

Under the first factor, plaintiff's counsel states that the time and labor required in this matter well exceeded 60 hours.  Based on their Time Matters software, which time stamps work created for clients, plaintiff's counsel approximates attorney time in excess of 50 hours, and staff time in excess of 10 hours.  Doc. 55 at 5; Doc. 55–5 at 2 (Thomas Diehl Aff. ¶ 6).  But, counsel emphasizes that much of the time spent on plaintiff's case was not captured by the software and the real hours spent likely exceeded the hours spent by defense counsel.

Where a party's counsel does not keep contemporaneous time records, the court may look to an opposing party's hours billed to assess the reasonableness of the hours billed by that party. *Sanderford v. Malley*, No. 14-2165-RDR-KGS, 2015 WL 1423157, at *4 (D. Kan. Mar. 27, 2015) (citing *Shrout*, 2001 WL 980280, at *3).  Here, while plaintiff's counsel did not keep contemporaneous time records, they assert that they began working on plaintiff's case 15 months before defense counsel knew about the matter.  Doc. 55 at 6.  Thus, their hours likely exceeded or at least were comparable to the hours spent by defense counsel.  "Generally, medical

malpractice cases require counsel to become familiar with all aspects of the medical procedure involved as well as the alleged complications that occurred." *Sanderford*, 2015 WL 1423157, at *4. As discussed above, defense counsel spent 206.4 hours on the matter, and the Court has determined that their $27,900.50 fee is reasonable. Like defense counsel, plaintiff's counsel reviewed the medical records. *See* Doc. 55 at 6; Doc. 55–5 at 3–4 (Thomas Diehl Aff. ¶ 8). They also prepared claims on plaintiff's behalf, kept her informed, made filings with the Court, and assisted her with the settlement of this action. *Id.*; Doc. 55–6 at 2 (Judy Whittington Aff. ¶ 5). And, the Time Matter software tracked some of their work. Plaintiff's counsel requests fees of $4,355.80—significantly lower than defendants' attorney fees. The Court concludes this first factor weighs in favor of a finding of reasonable fees based on the nature of this medical malpractice case and the time and labor required likely amounting to well over 60 hours.

### 2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney

While they were able to accept additional work after taking plaintiff's case, plaintiff's counsel argues that they also declined a number of cases so that counsel could balance their caseload. Doc. 55 at 7. But, counsel does not provide any evidence showing that it was apparent to the plaintiff-client that acceptance of her case would preclude other employment. And, here, any preclusion of other cases is what one expects in the ordinary practice of law. *See Shrout ex rel. Arnold*, 2001 WL 1526277, at *3 (finding that an attorney leaving a trial to meet normal discovery deadlines in another case was not atypical and "[a]ny preclusion of work in other cases was in line with what is expected in the ordinary practice of law"). The Court thus concludes that this factor is neutral.

7

### 3.   The fee customarily charged in the locality for similar legal services

Under the third factor, plaintiff's counsel's fees appear reasonable.  The Court would determine an hourly rate for work under this factor based on the norm for comparable lawyers of similar skill and experience in the area.  *Shrout*, 2001 WL 980280, at *4.  But, contingency fee agreements are common for plaintiff's attorneys in medical malpractice cases.  *Sanderford*, 2015 WL 1423157, at *5.  The proposed fee here is 45 percent of the gross settlement proceeds.  This fee agreement provides some basis for determining whether counsel's fees are reasonable.  *See id.*  However, "there is a lack of case law from this district addressing the reasonableness of a contingency fee in a medical malpractice case . . . ."  *Id.* at *5 n.11 (finding that a 25% contingency fee agreement is below the typical rate).

Plaintiff's counsel provided affidavits from two personal injury attorneys, Mr. White and Mr. Levy, who are unable to come up with an hourly figure they would charge in medical malpractice cases (Docs. 55–2, 55–3).  These two attorneys maintain that contingency fee agreements are the standard, and that a 45 percent contingency fee is typical and reasonable for the amount of work and risk involved.  Doc. 55–2 at 3 (Gary White Aff. ¶¶ 7–8); Doc. 55–3 at 3 (Jerry Levy Aff. ¶¶ 7–8).  Plaintiff agreed to the 45 percent fee, believing it to be reasonable.  Doc. 55–6 at 1 (Judy Whittington Aff.  ¶ 3).  She was unable to afford to pay an attorney on an hourly basis to take her case.  *Id.* at 2 (¶ 4).

Taking this information into account, the complexity of medical malpractice suits, and the amount requested here, the Court finds that this factor supports the reasonableness of the fees.  In comparison to the $27,900.50 determined as reasonable for defense counsel, the amount plaintiff's counsel requests for a presumably comparable number of hours worked is much lower.  The Court recognizes the nature of contingency fee cases and the time involved investigating

8

cases with a risk of no compensation.  Under the facts of this case, the 45 percent fee does not appear excessive.  Moreover, if the court applied similar hourly rates as those found reasonable for defense counsel to the work done by plaintiff's counsel, their requested fees would be reasonable, even at the mere 60 hours tracked in the Time Matters software.  The Court thus concludes this factor favors approving plaintiff's counsel's fees as reasonable.

### 4.   The amount involved and the results obtained

Under the fourth factor, plaintiff initially requested $815,495.09 in damages and, if plaintiff sought past and future lost wages or future medical expenses, her damages had the potential to reach $1,500,000.  While the settlement details are confidential, plaintiff's counsel obtained a favorable settlement for their client.  During the January 13, 2015 hearing, plaintiff agreed that her case presented difficulties in proving the difference between injuries caused by delay in treatment and injuries she would have had regardless.  She also confirmed that her counsel advised that, if this case proceeded to trial, she could obtain a more favorable jury verdict, a less favorable jury verdict, or the jury could return a verdict for defendants.  Plaintiff testified that it was her desire to settle this matter.  She testified that due to her financial situation, it was her wish to settle well below her initial damage calculation.  She finds the attorney fees and expenses sought by counsel to be fair and reasonable.  Doc. 55–6 at 2 (Judy Whittington Aff. ¶¶ 6–8).  This factor supports the reasonableness of plaintiff's counsel's fees.

### 5.   The time limitations imposed by the client or by the circumstances

Plaintiff's counsel states that the fifth factor—time limits imposed by the client or by the circumstances—was not an important factor in this case.  Counsel had adequate time to investigate the matter, exhaust all administrative remedies, and file suit before any statutes of limitations ran.  This factor does not favor or disfavor the reasonableness of the fees requested.

### 6.   The nature and length of the professional relationship with the client

Under the sixth factor, plaintiff's counsel states that their professional relationship with the client existed for the two years and eight months counsel worked on resolving plaintiff's claims for the injury underlying this action.  It appears plaintiff hired them only for this case and she had no prior (or continuing) relationship with the firm.  This factor thus is neutral.

### 7.   The experience, reputation, and ability of the attorney or attorneys performing the services

The seventh factor is counsel's experience, reputation, and ability.  Plaintiff's lead counsel, Ron Pope, has practiced in the medical malpractice area for 31 years.  Doc. 55–4 at 2 (Ronald Pope Aff. ¶ 3).  He has tried over 100 complex cases—many in the medical malpractice area, and worked on over 2,000 medical malpractice cases.  *Id.* at 2–3 (¶¶ 5, 14).  He is nationally recognized for his skill and experience in the field.  *Id.* (¶¶ 7–13).  Counsel Thomas Diehl has over 7 years of experience in the medical malpractice field.  Doc. 55–5 at 1 (Thomas Diehl Aff. ¶ 1).  Plaintiff was referred to these counsel because of their reputation in medical negligence cases.  *See id.* at 3 (¶ 8a); Doc. 55 at 12.  Plaintiff's counsel's experience supports the reasonableness of the fees.

### 8.   Whether the fee is fixed or contingent

As previously stated, plaintiff's counsel's fee is contingent on the success of the litigation.  This is the eighth factor to consider.  "Plaintiff bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Shrout*, 2001 WL 980280, at *2 (citation omitted).  Where a contingency fee contract is used, the contingent nature of the fee is only one factor considered by a court to determine reasonableness. *Id.*  If a court finds that a contingency fee is excessive, it can apply the lodestar analysis and,

instead, award fees based on an hourly basis.  *Id.*  As outlined above, the information presented

here establishes the reasonableness of the 45 percent contingency fee.

Weighing the above factors, the Court concludes that plaintiff's counsel's fees are

reasonable.

### D.  Plaintiff's Expenses

Plaintiff also asks the Court to approve expenses totaling $320.45.  This is one-third of

the total expenses incurred—the other two-thirds are apportioned to the settlement with

defendant United States of America.  Doc. 55–5 at 6 (Thomas Diehl Aff. ¶ 12).  Attorney fees

include reasonable expenses.  *See Shrout*, 2001 WL 980280, at *6 (citing *Aquilino v. Univ. of

Kan.*, 109 F. Supp. 2d 1319, 1327 (D. Kan. 2000)).  Here, the Court has reviewed the itemized

expenses submitted by counsel (Doc. 55–5 at 8) and finds reasonable the $320.45 requested as

expenses.

### E.  Conclusion

Pursuant to K.S.A. § 7-121b, the Court approves reasonable attorney fees of $27,900.50

for defendants, and reasonable attorney fees of $4,355.80 and expenses of $320.45 for plaintiff.

**IT IS THEREFORE ORDERED** that the attorney fees are fair and reasonable and

approved.

**Dated this 21st day of October, 2015, at Topeka, Kansas**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**